996 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The CAIN PARTNERSHIP, LTD., Plaintiff-Appellant,
v.
The FIRST NATIONAL BANK OF LOUISVILLE, Defendant-Appellee.
 No. 92-5809.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1993.
 
 Before: KENNEDY, NORRIS, and SUHRHEINRICH, Circuit Judges.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiff, The Cain Partnership, Ltd., appeals the district court's grant of summary judgment to defendant, The First National Bank of Louisville ("the bank"), in plaintiff's action for declaratory relief. The dispute which led to the lawsuit centered around the parties' differing views of the terms and effect of a document they signed on June 27, 1984.
 
 
 2
 Fully comprehending the positions taken by the parties requires some knowledge of events that preceded the dispute. In 1973, plaintiff leased real property located in Knox County, Tennessee, for a term of ninety-nine years, from the Lillie Mae Cain Testamentary Trust. In 1974, plaintiff in turn subleased the property to Colonial Enterprises, Inc. That lease permitted Colonial to assign its interest in the lease, so long as it remained liable to plaintiff. In 1984, Colonial decided to sell its interest to Premier Investment Properties, Inc. ("PIP"), which intended to obtain a loan from defendant bank in order to develop the property. The bank was willing to make the loan, with PIP's interest in the lease as security, if it could be assured that the lease was in good standing at the time of its assignment to PIP, and that the bank would be permitted to cure any subsequent default by PIP.
 
 
 3
 Plaintiff agreed to provide this by entering into an agreement with the bank entitled Landlord's Estoppel Certificate. That document is the focus of this lawsuit. In it, plaintiff represented to the bank that payments on the lease were up-to-date and that there was no other default in its terms, and granted to the bank the right to cure any default by PIP within thirty days of the receipt of notice from plaintiff of a default. It is the notice language of the certificate that spawned the dispute:
 
 
 4
 Landlord [plaintiff] acknowledges ... (e) that notice of any default by PIP under the Lease will be given by certified or registered mail.... Lender [the bank] will notify the Landlord ... of any default by PIP in its obligation to Lender. Lender will have the right, but not the obligation, to cure any default by PIP within thirty days of the receipt of any such notice of default from Landlord.
 
 
 5
 The lease was assigned yet again on April 13, 1987 by PIP to its parent company, Pioneer Investment Services Company ("Pioneer"). Three days later, plaintiff and Pioneer executed a document entitled Lease Assumption and Attornment Agreement. In that agreement, Pioneer agreed to assume the obligations of PIP and to attorn[1] to plaintiff "as if Pioneer were the original Tenant under the Lease," while plaintiff agreed to recognize Pioneer as the new tenant. The parties acknowledged that PIP remained liable under the lease. According to the district court, the bank consented to this assignment, without releasing PIP from its obligation on the loan.
 
 
 6
 In April 1989, Pioneer filed for protection under Chapter 11 of the Bankruptcy Code. On May 25, plaintiff sought to terminate the automatic stay imposed by 11 U.S.C. § 362 so that it might take possession of the real property. Plaintiff claimed that Pioneer had failed to pay real estate taxes prior to its bankruptcy filing, and that this failure resulted in automatic termination of the lease. On that same day, plaintiff sent a letter to the bank, which said it was designed to satisfy any contention that plaintiff might be obligated to provide notice to the bank under the terms of the estoppel certificate. The letter stated plaintiff's position that no notice was required, and went on to include this language:
 
 
 7
 This letter puts you on notice that ... the Lease is terminated....
 
 
 8
 ... [W]hatever rights, if any, you might have with respect to cure of the Lease, those rights do not provide any ability to cure the termination of the Lease. Therefore, the Partnership will oppose any attempt by you to cure the termination of the Lease.
 
 
 9
 The bankruptcy court denied plaintiff's motion to terminate the stay, and that ruling was affirmed in turn by the district court, and by a panel of this court. In re Pioneer Investment Servs. Co. v. The Cain Partnership, Ltd., 946 F.2d 445 (6th Cir.1991), cert. denied, 112 S.Ct. 2304 (1992). In this court's opinion, we noted that, while Pioneer had paid the amount required for real estate taxes into an escrow account, the escrow agent had failed to pay over that amount to satisfy the real estate taxes; that plaintiff had never given notice to Pioneer of the escrow agent's failure in this regard; and that plaintiff had not taken any actions that indicated that the lease was terminated. Accordingly, the lease was not terminated prior to the filing of the petition in bankruptcy. Id. at 447, 450.
 
 
 10
 After its failure to terminate the lease in bankruptcy court, plaintiff, on November 12, 1991, filed this action for declaratory relief in a Tennessee chancery court. It was subsequently removed to the district court, pursuant to its diversity jurisdiction.
 
 
 11
 The essence of the action was plaintiff's request for an interpretation of the effect of the estoppel certificate on its ability to terminate the lease free of any claims of the bank. The district court responded to the questions posed by the complaint in an order dated April 15, 1992:
 
 
 12
 1) Did the Landlord's estoppel certificate in question terminate when PIP assigned all of its rights in the leasehold to Pioneer?
 
 
 13
 No. The certificate contemplates future assignments and continues as if Pioneer were substituted for PIP in the certificate's language.
 
 
 14
 2) If the Bank breached ... the estoppel certificate by failing to give [plaintiff] notice of each of Pioneer's defaults, did this terminate the certificate?
 
 
 15
 No. While the certificate includes mutual promises by the parties to notify each other if PIP/Pioneer defaulted on any of its obligations, a breach of this agreement would not terminate the certificate.
 
 
 16
 3) Does the estoppel certificate entitle the Bank to "reverse" a termination of the lease agreement?
 
 
 17
 No. The estoppel certificate does not permit or prohibit [plaintiff] from terminating its lease agreement. It simply protects the Bank from arbitrary termination by allowing it thirty days in which to cure any defaults which might threaten its security interest. In other words, before [plaintiff] can take steps to terminate its lease, it must advise the Bank of its intention to terminate and allow the Bank a thirty-day opportunity to protect its investment by curing any breach or default by the lessee.
 
 
 18
 4) If the Bank fails to cure a default by the lessee within thirty days after notice from [plaintiff], is [plaintiff] free to initiate termination proceedings?
 
 
 19
 Yes.
 
 
 20
 5) Is [plaintiff's] letter of May 25, 1989, sufficient notice to the Bank to satisfy its obligation under § 9(e) of the estoppel certificate?
 
 
 21
 No. That letter put the Bank on notice that the lease was already terminated and that the Bank was not being given an opportunity to protect its interest by curing the default. If the estoppel certificate, which is not a model of clarity, is to have any value at all, it functions to estop the landlord from terminating the leasehold without prior notice to the Bank.
 
 
 22
 On appeal, plaintiff argues that the district court erred in ruling that the bank's failure to notify plaintiff of Pioneer's default in the payment of the loan did not terminate the obligations of the parties under the estoppel certificate, and in concluding that the assignment of the lease by PIP to Pioneer did not terminate those obligations. Plaintiff also complains that the district court erred in declining to rule on whether the bank had, by its conduct, waived any right to cure post-petition breaches of the lease by Pioneer.
 
 
 23
 Plaintiff argues that the assignment of the lease from PIP to Pioneer relieved it of any obligation to notify the bank of a default by Pioneer, since only PIP is mentioned in the estoppel certificate. While plaintiff would therefore like to be forgiven of its responsibility to notify the bank of any default by Pioneer, it nevertheless argues that the bank still was required to notify it if Pioneer did not make payments on the loan.[2] Since the act of assigning the lease did not release PIP from its obligations under either the lease or the loan, failure by Pioneer to make payments called for by the lease or the loan amounted to default by PIP. That is the default referred to in the certificate. Accordingly, the district court correctly concluded that failure by Pioneer to make lease or loan payments triggered the notice provisions of the certificate.
 
 
 24
 Under the terms of the certificate, while plaintiff was entitled to notice by the bank of a loan default, it was not then entitled to invoke a specified remedy, such as the right to cure. Therefore, the district court did not err in concluding that the bank's failure to notify plaintiff of a loan default would not be a breach so material as to warrant termination of the agreements found in the certificate.
 
 
 25
 As mentioned earlier, plaintiff was required by the estoppel certificate to notify the bank if the lease was in default, even after PIP assigned its interest in the lease to Pioneer. Plaintiff consented to the assignment by the attornment agreement, which also recognized that PIP remained liable on the lease. The bank consented to the assignment from PIP to Pioneer, but did not release PIP from its obligation on the loan. Accordingly, default by Pioneer in payments under the lease was tantamount to default by PIP, and notice was required. The certificate provided that upon notice from plaintiff of "any default" under the terms of the lease, the bank would have the right to cure that default. This contemplates notice sufficient to enable the bank to cure, which, of course, means that the bank would have to be advised with some specificity of the nature of the default including, for example, any amounts claimed to be due.
 
 
 26
 Clearly, the letter of May 25, 1989 did not provide the required specificity. In addition, as pointed out by the district court, that letter purported to put the bank on notice that the lease was already terminated and that the bank would not be given the opportunity to protect its interest by curing any default. Furthermore, we reject plaintiff's contention that it demonstrated to the district court other instances when notice was conveyed to the bank in a manner sufficient to comply with the requirements of the certificate. Under the circumstances, then, the district court correctly concluded that the bank had not received the notice that would start running the thirty-day period during which it had the right to cure.
 
 
 27
 For these reasons, then, the judgment of the district court is affirmed.
 
 
 
 [1]
 Attorn means to agree to recognize a new owner of a property or estate and become the new owner's tenant. Black's Law Dictionary 129 (6th ed. 1990)
 
 
 [2]
 This is not the only instance of inconsistency in plaintiff's position in this regard. On page five of its opening brief, plaintiff refers to a "breach by [the bank] when it failed to give notice to [plaintiff] of a default by Pioneer of the loan agreement." On the other hand, at page 23 of its reply brief, plaintiff advises us that "it continues to be the best judgment of [plaintiff] that, in the same way that [plaintiff] had no obligation to notify [the bank] anything about Pioneer, [the bank] had no obligation to notify [plaintiff] anything about Pioneer." (Emphasis in original.)